Filed 10/10/22  P. v. Lewis CA4/2
See dissenting opinion

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078898 |
| v. | (Super.Ct.No. RIF099009) |
| DEMOND ODELL LEWIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Robert L. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Demond Odell Lewis appeals from a trial court's order denying his petition for resentencing, "an order made after judgment that affects the substantial rights of [defendant] as it implicates his personal liberty interest." For the reasons forth *post*, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

On November 6, 2002, an information charged defendant with attempted murder under Penal Code[1] sections 664 and 187 (count 1); assault with a deadly weapon under section 245, subdivision (a)(2) (count 2); and possession of a firearm under former section 12021, subdivision (a)(1), now section 29800, subdivision (a)(1) (count 3).

Moreover, as to counts 1 and 2, the information alleged that (1) defendant personally and intentionally discharged a firearm and proximately caused great bodily injury or death to a person other than an accomplice under sections 12022.53, subdivision (d), and 1192.7, subdivision (c)(8); and defendant personally inflicted great bodily injury under sections 12022.7, subdivision (a), and 1192.7, subdivision (c)(8). As to all three counts, the information also alleged that defendant committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in any criminal conduct by gang members under sections 12022.7, subdivision (a), and 1192.7, subdivision (c)(8). Furthermore, the information alleged prior prison convictions, a prior serious felony conviction, and a prior

---

[1] All further statutory references are to the Penal Code unless otherwise specified

2

strike conviction under section 667, subdivisions (a), (c), and (e)(1); and 667.5, subdivision (b).

After a jury trial, on February 27, 2003, a jury convicted defendant on all counts and found all of the enhancements to be true. On March 6, 2003, the trial court found the prior prison convictions, prior serious felony conviction, and prior strike conviction to be true. On April 3, 2003, the trial court sentenced defendant to a determinate term of 14 years, followed by an indeterminate term of 95 years with no parole eligibility. (See *People v. Lewis* (July 9, 2004, E033480) [nonpub. opn.], p. 3 (*Lewis*).)

After defendant appealed, this court ordered the trial court to strike the serious felony conviction and one of the prior prison term enhancements. We remanded defendant's case for resentencing but in all other respects, we affirmed the judgment. (*Lewis*, *supra*, E033480 at p. 5.)

On February 28, 2022, defendant filed a petition for resentencing under section 1170.95.[2] In the petition, defendant alleged that he was convicted of attempted murder following a trial and could not presently be convicted of attempted murder in light of the revisions made to sections 188 and 189, effective January 1, 2019.[3] Defendant also requested the appointment of counsel to assist him.

---

[2] Effective June 30, 2022, section 1170.95 has been renumbered as section 1172.6 (Stats. 2022, ch. 58, § 10, eff. June 30, 2022). We will refer to the statute under the current number, section 1172.6.

[3] In 2019, defendant had previously filed a separate petition under an older version of the statute. On November 15, 2019, the trial court denied defendant's petition.

On April 22, 2022, at the hearing on defendant's petition, defendant was not present. Defendant's appointed counsel, however, was present and represented defendant in the proceeding. The trial court acknowledged that the prosecutor "articulated as a matter of law here, that [defendant] didn't receive the natural and probable consequences jury instructions" and that the jury found true the section 12022.53, subdivision (d), allegation. The court, therefore, ruled that defendant "is statutorily ineligible for relief, so that request is hereby denied."

On April 26, 2022, defendant filed a timely notice of appeal.

B.    FACTUAL HISTORY[4]

"One evening, a member of the Mead Valley Gangster Crip street gang (MVGC) with the moniker 'Devil' joined three other MVGC members who were drinking outside an apartment complex. When he arrived, Devil noticed defendant standing by himself outside some apartments on the other side of the street. Devil testified that defendant was also a member of MVGC and they had been running together for years.

"When Devil began talking to an ex-girlfriend, her cousin [who was] a member of a rival 'Blood' gang from Los Angeles, walked past and said, 'What's up, blood?' to Devil. Devil responded: 'I'm not your blood.' When the [ex-]girlfriend turned to walk away, Devil grabbed her, prompting her cousin to interject: 'Blood, I told you don't grab my cousin.' The [ex-]girlfriend tried to separate them by pushing her cousin up the

_____

   **4** The factual history is taken from our opinion in defendant's prior appeal. (*People v. Lewis*, *supra*, E033480).

4

apartment stairs, but Devil followed them to the stairway and grabbed her again, triggering a fight with her cousin.

"The [ex-]girlfriend testified that even before she spoke with Devil, her cousin loudly proclaimed that he would appreciate it 'if somebody didn't look at him funny.' Devil then approached her and asked 'who the fuck that [n*****] was.' She explained that he was her cousin and told Devil not to start trouble, then tried to follow her cousin up the apartment stairs. But Devil grabbed her and pulled her back down, triggering the fight.

"During the fight, Devil noticed a crowd of about 15 people watching, but he was too busy to see who they were. The [ex-]girlfriend tried to break up the fight, but had to push away several MVGC members who came over to join in. The cousin eventually pinned Devil to the ground, crouched on top of him, and began punching him. At that point, Devil heard a gunshot and the fight abruptly ended. Devil did not see the shooter, but told sheriff's deputies that he saw defendant among the people who fled.

"The [ex-]girlfriend testified that while she was trying to break up the fight, she heard someone say 'Move, baby girl.' She turned towards the voice and saw defendant pull aside a long flannel shirt he was wearing and produce a two-and-a-half foot long firearm. Defendant cocked the firearm and fired one shot, causing everyone to flee. Devil and the cousin tried to get up, but became tangled and fell back down. Defendant then pointed the firearm at the cousin's chest and fired a second shot, but the cousin pushed the barrel away just in time. The [ex-]girlfriend saw defendant get into a dark-colored car and Devil get into a white car.

5

"While driving her cousin to the hospital, the [ex-]girlfriend noticed that they were being followed by Devil and defendant in their separate cars. A sheriff's car subsequently flashed its lights at her, so she slowed, pointed to defendant's dark-colored car, and told the deputy that that was the person who shot her cousin. But the deputy claimed that the [ex-]girlfriend pointed to a white car, which the deputy was unable to stop. Furthermore, the [ex-]girlfriend allegedly told deputies that the shooter got into the same white car as Devil and never mentioned a second dark-colored car. However, dispatch logs indicated that three cars left the scene.

"The [ex-]girlfriend told the deputies that she knew who the shooter was, but refused to provide a name. Based on her general description, a photographic lineup was prepared and she selected defendant. After that, the [ex-]girlfriend provided defendant's gang moniker.

"When deputies located defendant the next day, he provided a false name and fled after they checked his identity. He was arrested a few weeks later and claimed that he was in the vicinity of the shooting looking for marijuana, but left before the fight. Defendant implied that Devil was the shooter, saying that Devil should take responsibility for what he did."

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this

6

court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its search of the record for error:

1.    "Did the trial court prejudicially err in failing to issue an order to show cause within the meaning of section 1172.6, subdivision (c)?"

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Kelly*, at p. 126; *People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

I concur:

McKINSTER
Acting P. J.

7

[*People v. Demond Lewis*, E078898]

MENETREZ, J., Dissenting.

Because this is an appeal from a postjudgment order, *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 do not require us to read the entire record ourselves to look for arguable grounds for reversal. (*People v. Thurman* (2007) 157 Cal.App.4th 36, 45; *People v. Serrano* (2012) 211 Cal.App.4th 496, 498.) Appointed appellate counsel filed a brief raising no issues, and defendant was given the opportunity to file a personal supplemental brief but declined. The appeal should accordingly be dismissed as abandoned. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1039-1040; *People v. Scott* (2020) 58 Cal.App.5th 1127, 1129-1130.) Moreover, the jury was not instructed on the natural and probable consequences doctrine or any other theory on which malice may be imputed, and the jury found that defendant personally and intentionally discharged a firearm causing great bodily injury. Defendant therefore is categorically ineligible for relief under Penal Code former section 1170.95 (now section 1172.6), so reading the entire record to look for reversible error is pointless and benefits no one. In addition, this is the second time defendant has filed a meritless resentencing petition under the same statute, followed by an appeal, a no-issue brief, and no personal supplemental brief. (See *People v. Lewis* (June 5, 2020, E074254) [nonpub. opn.].) How many times are we supposed to read the record to look for errors that we already know do not exist?

MENETREZ         

J.

1